**SAN PATRICIO COUNTY, Appellant,**

v.

**NUECES COUNTY, Appellee.**

**Nos. 13–05–022–CV, 13–05–075–CV.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Dec. 7, 2006.

Rehearing Overruled Jan. 18, 2007.

---

William G. Burnett, Sinton, for appellant.

Laura Garza Jimenez, County Atty., Douglas E. Chaves, James W. Wray, Jr., Chaves, Resendez & Rivero, LLP, Corpus Christi, for appellee.

Before Chief Justice VALDEZ and Justices CASTILLO and GARZA.

## OPINION

Opinion by Justice CASTILLO.

The parties filed separate appeals. Both appeals stem from a suit San Patricio County filed against Nueces County to determine their common boundary ("boundary suit").[1] The trial court severed from the original suit, San Patricio's claim for ad valorem taxes Nueces collected on disputed property ("tax suit"). A third suit between the same parties arose because Nueces filed a bill of review in connection with the trial court's declaratory judgment in the boundary suit ("bill of review suit"). We reverse and render the judgment entered in the bill of review suit in appeal number 13–05–075–CV. We affirm the declaratory judgment entered in the boundary suit.[2] We reverse and remand the judgment in the tax suit in appeal number 13–05–022–CV.

---

1. For ease of reference, we refer to San Patricio County as "San Patricio" and Nueces County as "Nueces."

2. This Court remanded the case for a final declaration of the boundary in San Patricio County's appeal in the boundary suit in *San Patricio County v. Nueces County*, No. 13–89–278–CV (Tex. App.-Corpus Christi Sept. 9, 1990, no pet. h.).

## I. BACKGROUND

■ On May 31, 1972, San Patricio filed its original petition seeking a declaratory judgment that would establish the true boundary line between San Patricio and Nueces, designate in which county certain artificial and natural modifications belonged, and force Nueces to account for ad valorem taxes collected on property within the San Patricio boundary line. By declaratory judgment entered after a bench trial in the boundary suit, the trial court fixed the boundary line between the two counties. The trial court entered the judgment on April 11, 2003. The judgment became final thirty days later.[3] Neither party appealed.

Alleging lack of notice of the trial court's final judgment in the boundary suit, Nueces filed a bill of review to attack the judgment on appeal. After considering the parties' competing summary-judgment motions, the trial court denied San Patricio's motion and granted Nueces's motion. In its judgment on the bill of review, the trial court incorporated the judgment previously entered in the boundary suit. On different grounds, both parties appeal the judgment.

In the tax suit, San Patricio alleged a cause of action for money had and received.[4] After considering the parties' competing summary-judgment motions, the trial court granted Nueces summary judgment on jurisdictional grounds of governmental immunity and denied San Patricio's motion. San Patricio appeals the judgment, asserting the doctrine of governmental immunity does not apply.

## II. ISSUES ON APPEAL A.

### San Patricio County's Appeal

By two issues, San Patricio appeals the bill of review judgment and the tax judgment. By its first issue, it asserts that the trial court improperly granted Nueces's bill of review because Nueces did not adduce evidence of two requirements of a bill of review. It argues that the summary judgment evidence did not prove that (1) the boundary judgment was rendered final and unappealable unmixed with any fault or negligence of Nueces, and (2) Nueces had a meritorious ground of appeal. By its second issue, San Patricio asserts that the trial court improperly dismissed the tax suit on governmental immunity grounds because the State conferred no immunity to Nueces to collect ad valorem taxes on property within San Patricio's boundary.[5]

### B. Nueces County's Cross–Appeal

By five issues, Nueces cross-appeals the declaratory judgment in the boundary suit. It argues that the evidence is legally insuf-

---

3. Generally, a trial court only retains plenary power for thirty days after a final judgment is signed. *See* Tex.R. Civ. P. 329b(d); Tex. R.App. p. 26.1(a)(1),(3); *In Re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 830 (Tex.2005); *Board of Trustees v. Toungate*, 958 S.W.2d 365, 367 (Tex. 1997); *First Alief Bank v. White*, 682 S.W.2d 251, 252 (Tex.1984) (orig. proceeding) (per curiam).

4. To support its cause of action, San Patricio cites *Staats v. Miller*, 150 Tex. 581, 243 S.W.2d 686, 687 (1951) (stating that the question in an action for money had and received

is to which party does the money, in equity, justice, and law belong). In its live pleading, San Patricio alleged that Nueces collected county taxes aggregating in excess of $500 on property adjudged to lie within San Patricio's boundary and Nueces had not delivered the tax monies to San Patricio.

5. By its third issue, urged on alternate grounds, San Patricio County asserts that, in the event we affirm the bill of review judgment, then the trial court erred in granting the interlocutory judgment in the boundary suit.

ficient to sustain the determination of the boundary line as well as the natural and artificial modifications within that boundary.[6]

## III. BILL OF REVIEW

On December 17, 2002, the trial court convened a bench trial to decide the issue of the common boundary, including the natural and artificial modifications included within the boundary. The trial court entered a final judgment on April 11, 2003 that, along with other relief, determined and declared the boundary line, with natural and artificial modifications, between San Patricio and Nueces Counties. Claiming that it did not receive timely notice of the judgment and, thus, could not appeal the erroneous declaratory judgment, Nueces filed a petition for a bill of review.[7] On September 24, 2004, Nueces filed a motion for partial summary judgment on grounds of a meritorious ground of appeal and official mistake. Exhibits attached to the motion include an affidavit of a court clerk and Nueces's counsel regarding the date of notice of the judgment.

San Patricio filed a response and countered with a no-evidence motion for summary judgment asserting as grounds no evidence to meet the requirements for entitlement to a bill of review and, in particular, the requirement for a bill of review that the failure to file a motion for new trial was unmixed with any fault or negligence on the part of Nueces or its counsel. Nueces filed a response to the no-evidence summary-judgment motion, conceding that it had the burden of proof as to the challenged requirements of a bill of review proceeding.

After considering the competing summary-judgment motions, the trial court granted Nueces's motion and entered judgment granting its bill of review.[8] Entered on January 7, 2005, the bill of review judgment recites:

On November 9, 2004, the Court heard both parties' motions for summary judgment. Plaintiff and Defendant appeared by their lawyers and argued for [sic] their motions.

The Court found that Nueces County established conclusively and as a matter of law that this Court should grant its motion for a bill of review, therefore;

The Court grants [Nueces County's] motion for summary judgment and de-

---

6. Specifically, Nueces County raises the five following counterpoints:

1. The trial court ruled properly in granting Nueces County's motion for partial summary judgment and in overruling San Patricio County's motion for summary judgment [in both the boundary and tax suits].

2. The judgment finding that the county boundary is the east bank of the Nueces River to its mouth and thence following the shoreline of Nueces, Corpus Christi and Redfish Bays to the San Patricio–Aransas County line correctly construes the statutes.

3. The judgment is based on legally insufficient evidence in holding that Bay Harbor Subdivision and Mile 533 Shipyard Islands are in San Patricio County.

4. The court incorrectly stated that:

As used in this description the term "shoreline" means the point at which the waters of the bays meet the mainland at mean lower low tide. Past and future natural and artificial modifications to the shoreline of San Patricio County shall form a part of San Patricio County.

5. The court's definition of the boundary of San Patricio County as it relates to the waters between Donnell and Ingleside Points and between Dagger Island and the San Patricio mainland is based on legally insufficient evidence that does not support awarding these waters to San Patricio County.

7. Nueces County filed the petition for bill of review in the boundary suit on June 14, 2004. On June 24, 2004, it refiled the petition under a separate cause number.

8. The record of the proceeding is before us.

nies [San Patricio County's] motion for summary judgment.

The Court further ORDERS the consolidation of this case and cause No. 4704 [the boundary suit], styled, *San Patricio County v. Nueces County* and the adoption of the judgment rendered on April 11, 2003, in cause 4704 [the boundary suit] for all purposes in this case No.2004–6–9840 [the bill of review suit].

The Court further ORDERS that these rulings constitute an appealable final judgment in both cases because all claims have been disposed of.

Both parties appealed the judgment on different grounds. Nueces challenges solely the declared boundary. San Patricio challenges the grant of the bill of review.

### A. The Law of Bill of Review Proceedings in the Summary–Judgment Context

#### 1. The Requirements to Sustain a Post–Trial Bill of Review

 A bill of review is an independent equitable action brought by a party to a former action seeking to set aside a judgment, which is no longer appealable or subject to motion for new trial. *See* Tex.R. Civ. P. 329b(f); *Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex.1985) (per curiam); *Baker v. Goldsmith*, 582 S.W.2d 404, 406 (Tex.1979); *Thomason v. Freberg*, 588 S.W.2d 821, 824 (Tex.App.-Corpus Christi 1979, no writ).[9] In a case where the parties have participated at trial and the losing party has been prevented from filing a motion for new trial or perfecting an appeal, in order to prevail upon a petition for bill of review, the petitioner must plead and prove (1) a failure to file a motion for new trial or a failure to advance an appeal (2) caused by the fraud, accident, or wrongful act of the opposing party or by an official mistake, (3) unmixed with any fault or negligence on the petitioner's part, and (4) a meritorious ground of appeal.[10] *Petro–Chemical Transport v. Carroll*, 514 S.W.2d 240, 244–46 (Tex.1974); *Thompson v. Ballard*, 149 S.W.3d 161, 164 (Tex.App.-Tyler 2004, no pet.); *McDaniel v. Hale*, 893 S.W.2d 652, 659–63 (Tex.App.-Amarillo 1994, writ denied). Final judgment in a bill of review proceeding should either deny any relief to the petitioner or grant the bill of review and set aside the former judgment. *See Baker*, 582 S.W.2d at 409. Only one final judgment may be entered in a bill of review action. *Id.*

#### 2. Standards of Review

##### a. Bill of Review

 We review the granting or denial of a bill of review under an abuse of discre-

---

9. The parties do not dispute that, after the expiration of thirty days from the date a judgment is rendered or motion for new trial overruled, a judgment cannot be set aside except by bill of review for sufficient cause, filed within the time allowed by law. *See* Tex.R. Civ. P. 329b(f). Here, Nueces failed to file a motion for new trial or appeal within thirty days from the date the trial court entered judgment declaring the parties' common boundary. By its petition for bill of review, Nueces asserted in part that (1) it did not know the trial court entered judgment and (2) the court clerk failed to provide Nueces statutory notice of the judgment. *See* Tex.R. Civ. P. 306a(3).

10. Where a petitioner seeks relief by bill of review because he lost his chance to file a motion for new trial or his chance to appeal, a meritorious defense means "a meritorious ground of appeal." *McDaniel v. Hale*, 893 S.W.2d 652, 664 (Tex.App.-Amarillo 1994, writ denied) (citing *Petro–Chemical Transport, Inc. v. Carroll*, 514 S.W.2d 240, 245 (Tex. 1974)). As stated by the Supreme Court in *Petro–Chemical*, a meritorious ground of appeal is one which, had it been presented to the appellate court as designed, "might, and probably would have" caused the judgment to be reversed. *Id.* at 668 (citing *Petro–Chemical*, 514 S.W.2d at 245).

tion standard. *Manley v. Parsons*, 112 S.W.3d 335, 337 (Tex.App.-Corpus Christi 2003, pet. denied). We indulge every presumption in favor of the trial court's ruling and will not disturb that ruling unless the trial court abused its discretion. *Layton v. Nationsbanc Mortgage Corp.*, 141 S.W.3d 760, 763 (Tex.App.-Corpus Christi 2004, no pet.); *Narvaez v. Maldonado*, 127 S.W.3d 313, 319 (Tex.App.-Austin 2004, no pet.); *Manley*, 112 S.W.3d at 337. A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, or without reference to guiding rules and principles. *Layton*, 141 S.W.3d at 763.

When the inquiry on the bill of review concerns questions of law, such as whether an appellant presented prima facie proof of a meritorious ground of appeal, we review the trial court's decision de novo. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998); *Manley*, 112 S.W.3d at 337 n. 2. We determine the correctness of the trial court's legal conclusions drawn from the facts. *Marchand*, 83 S.W.3d at 794. If we determine that a conclusion of law is not correct, but the trial court rendered the proper judgment, the incorrect conclusion of law does not require reversal. *Id.* Thus, in reviewing challenges to a trial court's conclusions of law, we sustain the judgment on any legal theory supported by the evidence. *Id.* We do not reverse an incorrect conclusion of law if the trial court's findings of fact support a correct legal theory. *Id.*

When the inquiry is as to the trial court's findings of historical facts, our review is deferential because the trial court is in a better position to weigh credi-bility and make such determinations. *In re R.J.H.*, 79 S.W.3d 1, 6 (Tex.2002). We do not engage in our own factual review, but instead determine only whether the trial court properly applied the law to the facts in reaching its legal conclusion. *See State v. $217,590 in U.S. Currency*, 18 S.W.3d 631, 633–34 (Tex.2000); *Segura v. State*, 826 S.W.2d 178, 181 (Tex.App.-Dallas 1992, pet. ref'd). Therefore, an appellant must establish that the trial court could only have reasonably reached one decision and that instead it reached a decision so "arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985).

#### b. *Summary Judgment* [11]

The function of summary judgment is to eliminate patently unmeritorious claims and defenses, not to deprive litigants of the right to a jury trial. *Alaniz v. Hoyt*, 105 S.W.3d 330, 344 (Tex.App.-Corpus Christi 2003, no pet.). In both traditional and no-evidence summary judgment motions, we review the evidence "in the light most favorable to the non-movant, disregarding all contrary evidence and inferences." *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex.App.-Corpus Christi 2003, no pet.). The movant bears the burden of showing both no genuine issue of material fact and entitlement to judgment as a matter of law. *Hoyt*, 105 S.W.3d at 345. We affirm a trial court's ruling on a summary judgment motion if any of the theories advanced in the motion is meritorious. *State Farm Fire & Cas.*

---

**11.** Because the trial court granted the bill of review petition in the context of competing summary-judgment motions and both motions are challenged on appeal, we address the standards applicable to San Patricio's no-evidence motion and Nueces's traditional motion.

*Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *Boren v. Bullen*, 972 S.W.2d 863, 865 (Tex. App.-Corpus Christi 1998, no pet.).

We review the summary judgment de novo to determine whether a party established its right to prevail as a matter of law. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex.1985); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 771 (Tex.App.-Corpus Christi 2003, no pet.). When both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex.2004); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

On appeal, the standard of review for the granting or denial of a motion for summary judgment is determined by whether the motion was brought on no-evidence or traditional grounds. Tex.R. Civ. P. 166a; *Ortega*, 97 S.W.3d at 771. The difference in relative burdens between the parties in the two types of summary judgment motions is significant. *Id.* Determination of the nature of the motion for summary judgment under analysis is critical. *Id.*

### 3. Traditional Summary–Judgment Motion under Rule 166a [12]

In a traditional summary judgment, if the movant conclusively establishes each element of its cause of action or defense, then the non-movant has the burden to negate at least one element of its cause of action or defense. *Hoyt*, 105 S.W.3d at 345. In other words, the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Mowbray*, 76 S.W.3d at 690. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in favor of the non-movant. *Id.* Evidence favoring the movant's position will not be considered unless it is uncontradicted. *Id.* We take as true the evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve all doubt in the non-movant's favor. *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211 (Tex.2003), reh'g denied; *Nabejas v. Tex. Dept. of Public Safety*, 972 S.W.2d 875 (Tex.App.-Corpus Christi 1998).

### 4. No-evidence Summary–Judgment Motion under Rule 166a(i) [13]

We review a no-evidence motion for summary judgment under the same legal sufficiency standard as a directed verdict. *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 290 (Tex.App.-Corpus Christi 2003, pet. denied) (citing *Zapata v. The Children's Clinic*, 997 S.W.2d 745, 747 (Tex.App.-Corpus Christi 1999, pet. denied)). The movant must assert (but does not have to produce evidence) that there is no evidence of an essential element of a particular claim or defense which the non-movant would have the burden of proving at trial; the nonmovant

---

**12.** *See* Tex.R. Civ. P. 166a.

**13.** *See* Tex.R. Civ. Proc. 166a(i).

must produce sufficient evidence to raise a genuine issue of material fact. *Branton,* 100 S.W.3d at 647.[14]

### B. Application of the Law to the Facts

#### 1. Nueces County's Traditional Summary–Judgment Motion

■■■■■ Final judgments should not be disturbed unless there is good reason for doing so. *Petro–Chemical,* 514 S.W.2d at 246. The finality of a judgment is an important consideration. *Id.* at 245. Because Nueces filed a traditional summary judgment motion, Nueces must conclusively establish each element of its right to a bill of review. *See Hoyt,* 105 S.W.3d at 345. It is only after Nueces establishes each element that San Patricio has the burden to negate at least one element of its cause of action or defense. *See id.*

Thus, in order for Nueces to establish it was entitled to summary judgment on its petition for bill of review, Nueces must have conclusively proven the four requirements set forth in *Petro–Chemical,* 514 S.W.2d at 244–46. *See also McDaniel,* 893 S.W.2d at 663. In its response, San Patricio countered that Nueces, and not San Patricio, had the summary-judgment burden to prove entitlement to a bill of review and Nueces had not met that burden. San Patricio further countered that its attached evidence, including various discovery documents, proved that Nueces failed to abide the judgment in the boundary suit.

This Court has held that the movant's burden in a bill of review proceeding is to introduce the statement of facts, exhibits and transcript from the prior suit and point out errors which would have justified a reversal in the prior suit had the movant had the opportunity to file a motion for new trial and/or a direct appeal. *Thomason,* 588 S.W.2d at 826 (citing *Petro–Chemical,* 514 S.W.2d at 245–46). Nueces's motion did not introduce the statement of facts, exhibits, and transcript from the boundary suit. *See id.* On appeal, Nueces argues that its summary-judgment motion established as a matter of law all requirements of a bill of review. San Patricio counters that Nueces adduced no summary-judgment evidence to prove that it might, and probably would have caused the judgment to be reversed on appeal.[15] *See Petro–Chemical,* 514 S.W.2d at 245; *Thomason,* 588 S.W.2d at 821.

Where a party seeks relief by bill of review because it lost the chance to file a motion for new trial or the chance to appeal, a meritorious ground of appeal is one which, had it been presented to the appellate court as designed, "might, and probably would have" caused the judgment to be reversed. *McDaniel,* 893 S.W.2d at 668 (citing *Petro–Chemical,* 514 S.W.2d at 245).

■■■■ Nueces claimed it was entitled to a bill of review because it had a meritorious ground of appeal. As to this ground for summary-judgment, Nueces asserted in its motion that its petition "cites errors of law and erroneous factual determina-

---

**14.** More than a scintilla of evidence exists when the proffered evidence "would enable reasonable and fair-minded people to differ in their conclusions." *Branton v. Wood,* 100 S.W.3d 645, 646 (Tex.App.-Corpus Christi 2003, no pet.). We consider any quantum of evidence greater than a scintilla sufficient to raise a genuine issue of material fact. *Id.* at 647.

**15.** In its summary-judgment response and its no-evidence summary-judgment motion, San Patricio asserted generally that Nueces had not proven its entitlement to bill of review relief.

tions by the Court in the Judgment which, if taken as true, constitute a prima facie showing of the 'meritorious defense [sic].' " Thus, we turn to the petition for the bill of review, as amended. In the context of the challenged requirement, the amended petition complains of three "erroneous decisions" of the trial court including its determinations with respect to the common boundary.[16] The motion does not provide evidentiary support to prove to the trial court that the boundary suit judgment "might, and probably would have" caused the judgment to be reversed on the claimed erroneous decisions or otherwise. *See Petro–Chemical,* 514 S.W.2d at 245. Thus, Nueces's statements are mere conclusions and, accordingly, not competent summary-judgment proof. *See Hidalgo v. Surety S & L Assn.,* 487 S.W.2d 702, 703 (Tex.1972) (holding that conclusions in summary-judgment evidence are not competent evidence to support summary judgment); *see also Willacy County Appraisal Review Bd. v. South Padre Land Co.,* 767 S.W.2d 201, 204 (Tex.App.-Corpus Christi 1989, no writ) (holding that factual recitations contained in unsworn pleadings are not evidence and, thus, were of no probative value).

Viewed in the light most favorable to San Patricio, the non-movant, Nueces's summary-judgment motion does not affirmatively establish as a matter of law that it was entitled to judgment granting a bill of review. *See KPMG Peat Marwick,* 988 S.W.2d at 748. Nueces proffered no summary-judgment evidence establishing as a matter of law that it had a meritorious ground of appeal. Thus, Nueces did not prove the essential requirement of a meritorious ground on appeal on which it had the burden of proof. *See Hoyt,* 105

S.W.3d at 345; *Petro–Chemical,* 514 S.W.2d at 245; *Thomason,* 588 S.W.2d at 825. Based on our de novo review, we conclude that the trial court improperly granted Nueces's summary-judgment motion. *See Nixon,* 690 S.W.2d at 548-49; *Ortega,* 97 S.W.3d at 771.

Because the grounds Nueces advanced in the summary-judgment motion in the context of the bill of review proceedings are not supported by the record, Nueces has not demonstrated proof of an essential requirement and, thus, is not entitled to a judgment granting a bill of review. Accordingly, we sustain San Patricio's first issue presented. Because we have concluded that judgment granting the bill of review is error, we overrule Nueces's second, third, fourth, and fifth counterpoints.

To determine whether we remand or render, we review the trial court's denial of San Patricio's summary-judgment motion. *See* Tex.R.App. P. 43.3; *Patient Advocates,* 136 S.W.3d at 648; *FM Props. Operating Co.,* 22 S.W.3d at 872.

### 2. San Patricio County's No–Evidence Summary–Judgment Motion

By its motion, San Patricio asserted that Nueces did not have evidence to prove, generally, a bill of review claim and, particularly, that the failure to act on the boundary judgment was unmixed with any fault or negligence on Nueces's part. *See Petro–Chemical,* 514 S.W.2d at 244–46. In its response, Nueces conceded it must prove the requirements of *Petro–Chemical.* We have already concluded that Nueces adduced no evidence to prove the meritorious claim on appeal requirement. We similarly conclude that Nueces ad-

---

**16.** The claimed erroneous decisions are the trial court's (1) finding that a subdivision and island were part of San Patricio County, (2) finding that past and future natural and artifi-

cial modifications to the San Patricio's shoreline are part of that county, and (3) erroneous description of water areas that created the disputed islands.

duced no evidence to prove that its failure to file a motion for new trial or to advance an appeal was unmixed with any fault or negligence of its own. *See id.; Branton,* 100 S.W.3d at 647. Because the record supports summary judgment in favor of San Patricio and against Nueces on no-evidence grounds, we conclude that San Patricio affirmatively established its right to summary judgment in the bill of review suit. *See* Tex.R. Civ. P. 166a (i); *Branton,* 100 S.W.3d at 647. Thus, we conclude the trial court erred in denying the motion.

### C. Disposition

Accordingly, we reverse the trial court's judgment granting the bill of review. We render judgment in favor of San Patricio County. We affirm the April 11, 2003 judgment in the boundary suit. That judgment remains in full force and effect as the trial court's final judgment on the merits of the boundary dispute.

### IV. IMMUNITY

On January 7, 2005, simultaneously with entry of the judgment granting the bill of review judgment, the trial court granted Nueces's summary-judgment motion and denied San Patricio's motion in the tax suit. The trial court determined that it lacked jurisdiction because Nueces was immune from suit and entered the following judgment:

On September 29, 2004, the court heard the parties' motions for summary judgment. The parties appeared by their lawyers and argued their motions.

The Court found that Nueces County established conclusively and as a matter of law that it has immunity from San Patricio County's suit and therefore this Court has no jurisdiction over such suit.

The Court therefore GRANTS Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

The Court ORDERS this suit dismissed for want of jurisdiction.

In discovery responses, Nueces expressly admitted that it collected ad valorem taxes on property determined in the boundary suit to lie within San Patricio boundary. By its cause of action, San Patricio alleged that Nueces collected ad valorem taxes on property adjudged located within San Patricio's boundary. The issue San Patricio posits is whether the doctrine of governmental immunity rendered the trial court powerless to grant relief to one county whose sovereign prerogative was usurped by another county. San Patricio maintains that immunity does not apply and, thus, it and not Nueces was entitled to summary judgment as a matter of law.

### A. Plea to the Jurisdiction

Encompassed within Nueces's summary-judgment motion was its plea to the jurisdiction. Nueces asserted that it enjoyed sovereign immunity from suit and it had not waived immunity. San Patricio countered with a motion for partial summary judgment (exclusive of the amount of taxes due and owing) asserting as grounds its sovereign right to a claim for ad valorem taxes admittedly collected and retained by Nueces on property adjudged within San Patricio's boundary.

### A. Standard and Scope of Review

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist.,* 34 S.W.3d 547, 554 (Tex.2000). To prevail on a plea to the jurisdiction, the defendant must show an incurable jurisdictional defect on the face of the pleadings, making it impossible for the plaintiff to amend its petition in order to confer juris-

diction on the district court. *MAG–T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 624 (Tex.App.-Austin 2005, pet. denied). The plaintiff then has the burden of alleging facts to affirmatively demonstrate that the court has jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004); *Tex. Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993).

In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry. *Texas Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001); *Bland*, 34 S.W.3d at 554. When we consider a trial court's order on a plea to the jurisdiction, we construe the pleadings in the plaintiff's favor and look to the pleader's intent. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d at 446; *Peek v. Equipment Serv. Co. of San Antonio*, 779 S.W.2d 802, 804–05 (Tex.1989). When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *See Peek*, 779 S.W.2d at 804–05; *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9–10 (Tex. 1974). On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *See Peek*, 779 S.W.2d at 804–05; *see also County of*

*Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002).

We review a denial of a plea to the jurisdiction de novo. *See Miranda*, 133 S.W.3d at 226. We do not look at the merits of the case but construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider evidence necessary to resolve the jurisdictional issues. *See Miranda*, 133 S.W.3d at 227 (citing *Bland*, 34 S.W.3d at 555).

In *Miranda*, the Supreme Court recognized that a trial court's review of a plea to the jurisdiction challenging the existence of jurisdictional facts "mirrors" that of a traditional summary judgment. *Id.*; Tex.R. Civ. P. 166a(c). The *Miranda* Court explained that, by requiring the state to meet the summary judgment standard of proof, "we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" *Miranda*, 133 S.W.3d at 228 (quoting *Bland*, 34 S.W.3d at 554). Under this procedure, the burden is on the defendant to put forth evidence establishing as a matter of law that the trial court lacks jurisdiction.[17] *Id.*; Tex.R. Civ. P. 166a. The burden then shifts to the plaintiff to demonstrate that there is a disputed issue of material fact regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. The defendant cannot simply deny the existence of jurisdictional facts and force the plaintiff to raise a fact

---

**17.** We pause briefly to note the juxtaposition of Nueces's argument for immunity purposes in the tax suit with its affirmative claims in the bill of review suit which it filed against another governmental unit, San Patricio. Arguably, in the bill of review suit, San Patricio would be entitled to the same immunity from suit which Nueces espouses in the tax suit.

*See City of Irving v. Inform Constrs., Inc.* 143 S.W.3d 371, 374 (Tex.App.-Dallas, 2004, pet. filed) (holding that City waived immunity by seeking affirmative relief from the trial court). A party has a choice, either invoke jurisdiction of the court by seeking affirmative relief or challenge the court's jurisdiction over the dispute. *See id.*

issue. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex.2002); *see also Brown,* 80 S.W.3d at 555 ("In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and evidence pertinent to the jurisdictional inquiry.").

### B. Governmental Immunity

The parties do not dispute that counties of the State are authorized to levy ad valorem taxes upon all property within their respective boundaries for county purposes. *See* Tex. Const. art. VIII, § 1–a. The question squarely before us, however, is whether Nueces enjoys immunity from suit on taxes levied on property adjudged as San Patricio's property.

As a general rule, a governmental unit [18] is immune from tort liability under the doctrine of sovereign immunity.[19] *See Harris County v. Dillard,* 883 S.W.2d 166, 168 (Tex.1994). Historically, this doctrine, as its name implies, shields the sovereign from liability. *Tyrrell v. Mays,* 885 S.W.2d 495, 499 (Tex.App.-El Paso 1994, reh'g denied). Because the governmental entities involved here are counties,[20] we use the term governmental immunity in this opinion.[21] *United Water*

*Servs. v. City of Houston,* 137 S.W.3d 747, 750 n. 4 (Tex.App.2004).

A trial court is required to look to common law principles to determine whether a county enjoys governmental immunity from suit. *See Texas A & M University–Kingsville v. Lawson,* 87 S.W.3d 518, 520 (Tex.2002) ("In Texas, the bar of sovereign immunity is a creature of the common law and not of any legislative enactment."). Because we have found no case law addressing the horizontal immunity question before us, for guidance we look to case law addressing derivative immunity in the context of municipalities.

Since 1884, municipalities have enjoyed immunity when performing governmental functions, but not when performing proprietary functions. *See City of Galveston v. Posnainsky,* 62 Tex. 118, 132–33 (1884) (first distinguishing between municipality's governmental and proprietary functions for purposes of immunity from tort claims). The court reasoned that in so far as municipalities exercised powers conferred on them for public purposes pertaining to the administration of general laws made to enforce the general policy of the state, they should be deemed agencies of the state, and not subject to be sued for any act or omission occurring while in the exercise of such power. *Id.* at 127. The

---

18. The parties do not dispute that the counties are each a "governmental unit" as defined by the Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3) (Vernon 2005).

19. The terms sovereign immunity and governmental immunity are often used synonymously and interchangeably without distinction. *United Water Servs. v. City of Houston,* 137 S.W.3d 747, 750 n. 4 (Tex.App.2004). However, the Supreme Court has noted that sovereign immunity refers to the State's immunity from suit and liability and protects the State and its divisions, while governmental immunity protects political subdivisions of the State, including counties, cities, and school

districts. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003).

20. A county is included as a "political subdivision" which is in turn categorized as a "governmental unit" in section 101.001(3)(B) of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code § 101.001 (Vernon 2005); *Potter County Attorney's Office v. Stars & Stripes Sweepstakes,* 121 S.W.3d 460, 465 (Tex.App.-Amarillo 2003, no pet.).

21. If the authority cited in this opinion uses "sovereign immunity," we shall also employ that terminology. *City of Houston,* 137 S.W.3d at 750 n. 4.

Supreme Court's reasoning shows that municipalities enjoy immunity from suit for governmental activity, not due to any inherent sovereignty, but, rather, because the State cloaks them with the State's sovereign immunity from suit while they carry out the State's public purposes. *See id.* at 126–27. Thus, any immunity from suit that a municipality enjoys derives solely from the State's immunity-the former receives immunity from suit only when carrying out governmental activities implicitly delegated to it to carry out in the latter's stead. *See id.* at 128. Texas courts have repeatedly noted or applied variations of the "derived immunity" reasoning that the *Posnainsky* court first recognized.[22]

■■■■■■ "Counties are declared, by the laws of this state, to be corporations and they are municipal corporations in the sense that they are agencies 'to regulate and administer the internal concerns of the locality in matters peculiar to the place incorporated....' " *Posnainsky*, 62 Tex. at 127.[23] Thus, for municipal corporations of

**22.** *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 n. 12 (Tex. 2000) (citing *City of Galveston v. Posnainsky*, 62 Tex. 118, 132–33 (1884) and noting its explanation that city is deemed agent of state for sovereign-immunity purposes when city exercises powers for public purpose); *Gates v. City of Dallas*, 704 S.W.2d 737, 738–39 (Tex. 1986) ("The governmental functions of a municipal corporation have been defined as those acts which are public in nature and performed by the municipality 'as the agent of the State in furtherance of general law for the interest of the public at large.' ") (citation omitted); *State v. Brannan*, 111 S.W.2d 347, 348–49 (Tex.App.-Waco 1937, writ ref'd) ("In other words, a city has no sovereignty of its own and likewise no immunity of its own, but borrows its sovereignty from the state and is immune only in so far as it acts as an agent of the state."); *City of San Benito v. Ebarb*, 88 S.W.3d 711, 720 (Tex.App.-Corpus Christi 2002, pet. denied) ("A city is deemed an agent of the state for sovereign immunity purposes when exercising its powers for a public purpose."); *Lake Charles Harbor & Terminal Dist. v. Bd. of Trs. of Galveston Wharves*, 62 S.W.3d 237, 246 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) ("Municipalities, such as the City of Galveston, are creatures of our law and are created as political subdivisions of the state as a convenient agency for the exercise of such powers as are conferred upon them by the state."); *Tex. Workers' Comp. Comm'n v. City of Eagle Pass/Tex. Mun. League Workers' Comp. Joint Ins. Fund*, 14 S.W.3d 801, 803–04 (Tex.App.-Austin 2000, pet. denied) ("A municipality's sovereignty is dependent upon that of the State.... [Municipalities'] immunity results from agency principles...."); *Bailey v. City of Austin*, 972 S.W.2d 180, 192 (Tex.App.-Austin 1998, pet. denied) ("Governmental functions are those public acts which the municipality performs 'as the agent of the State in furtherance of general law for the interest of the public at large.' ") (quoting *Gates*, 704 S.W.2d at 738); *Lawrence v. City of Wichita Falls*, 906 S.W.2d 113, 115 (Tex.App.-Fort Worth 1995, writ denied) ("Historically, under the common-law doctrine of sovereign immunity, municipalities were immune from liability as agents of the State."); *see also City of Houston v. Southwest Concrete Constsr., Inc.* 835 S.W.2d 728, 730 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (stating that municipality is "afforded the state's sovereign immunity" in performing governmental functions as defined by TTCA, except to extent that TTCA waives immunity); *Faulk v. City of Tyler*, 389 S.W.2d 706, 707 (Tex.Civ.App.-Tyler 1965, writ ref'd n.r.e.) ("As such sub-divisions of the State, exercising locally a portion of the powers of a State, such municipalities have no greater rights, immunities, or exemptions than does the State of Texas from which exclusively it derives its rights and powers."); *City of Beaumont v. Calder Place Corp.*, 143 Tex. 244, 183 S.W.2d 713, 716 (1944) ("Respondent [corporation] could no more circumscribe the exercise of [the power to own, to operate, and to maintain a water-works system] in the hands of the agent [home-rule municipality] ... than it could if that power were still in the hands of the principal, the State of Texas.").

**23.** Counties are created by general laws, and while they are municipal corporations in a restricted sense, they are involuntarily so, and sustain to the state a relationship which a town or city incorporated does not sustain.

any class, and however incorporated, exercising powers conferred on them for public purposes that pertain to the administration of general laws made to enforce the general policy of the state, they should be deemed agents of the state, subject to suit only when the state, by statute, declares they may be. *Id.* at 127. Therefore, a county's immunity from suit arises from the State's immunity and is exercised only when the county is carrying out governmental activities implicitly delegated by the State to be carried out.[24] *Id.* at 128.

## C. Application of the Law to the Facts

 San Patricio maintains that the trial court erred in granting Nueces's jurisdictional plea because immunity from suit does not apply to a governmental entity when it is performing an act that is not a governmental function. Nueces's immunity from suit "does not arise from any inherent sovereignty of its own, but instead derives from its status as a political subdivision of the state." *See State of Texas v. City of Galveston,* 175 S.W.3d 1, 5 (Tex.App.–1st Dist. Houston 2004). Immunity is exercised only when the county is carrying out governmental activities implicitly delegated by the State to be carried out. *Posnainsky,* 62 Tex. at 128. Nueces cannot be shielded by the umbrella of governmental immunity when it assesses and collects ad valorem taxes on property not located within its boundaries because this is not a governmental activity delegated by the State. *See id.* Because the State does not delegate the collection of taxes on property that is not within a county's boundaries, immunity does not arise.[25] Because Nueces admittedly levied taxes on property adjudged located in San Patricio County and retains those taxes, governmental immunity did not apply to an act not authorized and not derived from the sovereign State.

Accordingly, we agree with and adopt San Patricio's argument as follows:

While the State may also have independent general immunity with respect to its governmental subdivisions, a county has no independent general immunity with respect to the State or the State's governmental subdivisions. A county's immunity is derivative. It enjoys immunity when it acts as an agent of the State in exercising sovereign rights delegated to it by the State.

It follows that Nueces has no immunity from San Patricio's suit for taxes levied on property within San Patricio's boundary. Nueces could have immunity only if exercised a sovereign right when it collected the taxes. It could exercise a sovereign right only if it was delegated the power by the State to collect the taxes. The State delegated Nueces no right to tax property in San Patricio nor to resist San Patricio's suit to recover the taxes. On the other hand, when San Patricio brought this suit, it exercised its State sovereignty committed to it to collect taxes on [property within its boundaries].

[In short], we have a suit brought by one county asserting a sovereign right

---

They are created to carry out a policy common to the whole state, and not mainly to advance the interest of the particular locality, and to bring advantage or emolument to the inhabitants of the municipality. *Posnainsky,* 62 Tex. at 127.

24. Political subdivisions have the power to assess and collect taxes. Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(a)(26) (Vernon 2005); *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 940 (Tex.1993).

25. Whether other defenses, including estoppel, might preclude San Patricio County from succeeding on its claims, in whole or in part, is for the trial court to decide.

against another county defending no sovereign right. While Nueces is sovereign with respect to objects committed to it, Nueces is not sovereign with respect to objects committed to San Patricio. Nueces has no sovereignty with respect to San Patricio on [the summary-judgment facts]. Nueces has no immunity on [the summary-judgment facts].[26]

We conclude that, as a matter of law, summary judgment on governmental immunity grounds in favor of Nueces was improper. Conversely, San Patricio has demonstrated, as a matter of law, summary judgment in its favor is proper. We sustain San Patricio's second issue and overrule Nueces's first counterpoint to the extent it relates to the tax suit. We reverse the trial court's dismissal judgment in the tax suit. Because San Patricio sought only partial judgment with respect to the question of immunity, we remand the case for further proceedings. *See* Tex. R.App. P. 43.3, 44.1.

## V. CONCLUSION

We sustain San Patricio's issues on appeal and overrule Nueces' counterpoints. By our decision, we affirm the April 11, 2003 judgment in the boundary case, vacate the bill of review judgment, and reverse and remand the tax suit judgment.

---

26. San Patricio's brief at pages 8–9.